IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| TERESA H. SMITH, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:17-cv-03334-PWG |
| MEGAN J. BRENNAN, | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

This dispute has been festering for more than a decade. Before filing this federal lawsuit, Plaintiff Teresa H. Smith, a former longtime employee of the U.S. Postal Service, had been seeking redress through the federal administrative complaint process since 2007, when she first filed a formal complaint accusing the agency of discriminating against her on the basis of a disability. That process concluded in July 2017, when the U.S. Equal Employment Opportunity Commission's ("EEOC's") Office of Federal Operations ("OFO") denied her appeal of the agency's final order and issued her a right-to-sue letter.

U.S. Postmaster General Megan J. Brennan, the defendant in this civil action, argues Ms. Smith's suit is time-barred. I agree. Ms. Smith filed her action two weeks too late and has not offered any legitimate reasons for equitably estopping Ms. Brennan from enforcing the time limit. I am therefore granting the defense's Motion to Dismiss or, in the Alternative, for Summary Judgment, which I am treating as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

1

## FACTUAL BACKGROUND

Ms. Smith worked for the Postal Service for 20 years, from July 1988 until her resignation in October 2008. *See* Smith Decl. ¶ 2, ECF No. 16-1. In February 2007, she filed an Equal Employment Opportunity ("EEO") complaint alleging that the agency had denied her application for a position as a sales, services, and distribution associate, even though she had been the only bidder and was qualified for the job.[1] Feb. 2007 EEO Compl., ECF No. 12-3. She accused the agency of discriminating against her because of her plantar fasciitis, a condition that limited her ability to stand or walk. *See id.*; Smith Decl. ¶ 4.

In proceedings before an EEOC administrative judge, the agency argued that Ms. Smith did not meet the definition of an "individual with a disability" and was not "qualified" for relief under the Rehabilitation Act; that the agency had made good-faith efforts to accommodate her; and that there were legitimate, nondiscriminatory reasons for all of the challenged actions. *See* 2007 USPS Motion 6-14, ECF No. 12-4. The administrative judge, granting the agency's motion for a decision without a hearing, concluded Ms. Smith's limitations associated with her plantar fasciitis were not severe enough to constitute a "disability" under the Rehabilitation Act. *See* March 2008 AJ Decision 10-11, ECF No. 12-5. He also concluded that the agency's actions did

---

[1] Ms. Smith attests that she filed a grievance with her labor union, the American Postal Workers Union ("APWU"), in November 2006 "but did not receive a response." Smith Decl. ¶ 22. She said it was not until "[s]ometime in 2008" that the APWU mailed her a document stating that her grievance had been resolved in her favor. *Id.* ¶¶ 33-34; *see* Grievance Resolution, ECF No. 16-17. The document – dated November 22, 2006, and signed by representatives of the Postal Service and the APWU – stated: "It is mutually agreed that the subject is considered resolved based on the following: That the bid position ARL-06 be awarded to Teresa Smith on the grounds that she was the successful bidder for the position. The grievant is to be placed in the position by December 2, 2006." Grievance Resolution. The APWU did not explain the reason for the delay in notifying her of the favorable resolution. *See* Smith Decl. ¶ 34. The Postal Service official who seemingly signed the document has since stated she did not believe Ms. Smith ever filed a grievance. *See id.* ¶ 35; Taylor Aff. ¶ 24, ECF No. 16-11.

not support a claim of reprisal[2] because Ms. Smith could not establish that its stated reasons were pretextual. *See id.* at 11. The agency soon afterward issued a final order adopting the administrative judge's findings. *See* June 2012 OFO Order 2, ECF No. 12-6.

Ms. Smith appealed the agency's final order to the OFO. *See id.* at 1. In a June 2012 order, the OFO vacated the agency's order, concluding that it had "failed to develop an adequate evidentiary record" to support an assessment of whether Ms. Smith was "substantially limited in a major life activity because of her plantar fa[s]ciitis." *See id.* at 4-6. The OFO remanded the complaint back to the agency with instructions to complete a supplemental investigation. *See id.* at 6.

In September 2015, after a supplemental investigation, the EEOC administrative judge again granted the agency's motion for a decision without a hearing. Sept. 2015 AJ Order, ECF No. 12-10. As before, the administrative judge concluded Ms. Smith had failed to establish that she was a "person with a disability." *Id.* at 10. He determined that Ms. Smith did have a permanent impairment but that "the restrictions it causes are not so severe that she is unable to perform any major life activity that the average person in the general population can perform." *Id.* Likewise, the administrative judge concluded that she had once again failed to establish that the agency's stated reasons for cancelling her bid for the position she sought were pretextual. *See id.* at 12. The agency adopted the administrative judge's decision, as it had seven years earlier. *See* July 2017 OFO Order 1, ECF No. 1-1.

---

[2] The February 2007 EEO complaint that precipitated this case was not Ms. Smith's first administrative request for remediation. In June 2006, Ms. Smith filed an "Information for Pre-Complaint Counseling," in which she complained that her supervisors had assigned her to a position for which she was "not physically able to perform all duties and responsibilities." ECF No. 16-7. That case closed in August 2006, without the filing of a formal complaint. *See* Sept. 2015 AJ Order 7, ECF No. 12-10.

3

This time, the OFO affirmed the agency's final order, concluding "that the AJ correctly determined that the preponderance of the evidence did not establish that [Ms. Smith] was discriminated against by the Agency as alleged." *Id.* The OFO enclosed along with its decision a "Statement of Rights – On Appeal," which outlined Ms. Smith's legal options in response to the decision. *See id.* at 3. Following a discussion of her right to ask the OFO to reconsider its decision, the statement noted: "You have a right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision." *Id.*

The OFO's decision is dated July 25, 2017. *See id.* at 4. Ms. Smith, who is representing herself in this suit, filed her Complaint in this Court on November 9, 2017. *See* Compl., ECF No. 1. The section of her Complaint marked "Statement of Claim" reads in full:

> I was wrongfully denied a position that entitled me to a different work shift. I was fully qualified to perform the duties of the job because I was working the exact same position. I had previously filed an EEO in 8-06. The position I applied for was in 11-06. I was informed by the bid clerk I was the only successful bidder and the Postmaster informed her not to notified [sic] me I was awarded the position.

Compl. 6. The civil cover sheet identifies her claim as one for retaliation under Title VII. *See* ECF No. 1-3.

Postmaster General Megan J. Brennan, the named defendant in this suit, filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 12. The accompanying memorandum, which construes Ms. Smith's claim as a disability-based discrimination claim under the Rehabilitation Act, *see* Def.'s Mem. 10, ECF No. 12-1, urges the Court to dismiss this lawsuit as untimely, *see id.* at 7-9. It further argues that Ms. Smith's claim fails because she cannot demonstrate that she is a qualified individual with a disability. *See id.* at 10-13.

The parties have fully briefed the motion.[3] See ECF Nos. 12-1, 16, 25, 28. No hearing is required. See Loc. R. 105.6.

## STANDARD OF REVIEW

Postmaster General Brennan has styled her motion as a Motion to Dismiss or, in the Alternative, for Summary Judgment. Rule 12(b)(6) of the Federal Rules of Civil Procedure, which governs motions to dismiss, authorizes parties in a civil action to seek the dismissal of a claim or complaint on the grounds that it fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6); *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 647-48, (D. Md. 2015). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB–12–

---

[3] On December 3, 2018, I granted Ms. Smith's request to allow Monica V. Douglas, an attorney for the Public Defender Service for the District of Columbia and a friend of Ms. Smith, to prepare and submit a legal memorandum on her behalf in response to the defense's motion. See ECF No. 21.

1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). However, if the Court considers matters outside the pleadings, the Court must treat the motion as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, 916 F. Supp. 2d 620, 622–23 (D. Md. 2013).

Rule 56(a) of the Federal Rules of Civil Procedure obliges a court to enter summary judgment in a movant's favor upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that 'might affect the outcome of the suit under the governing law.'" *Smith v. Renal Treatment Ctrs.-Mid-Atl., Inc.*, No. RDB-16-3656, 2018 WL 950018, at *4 (D. Md. Feb. 20, 2018) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)), *aff'd*, 736 F. App'x 68 (4th Cir. 2018). "A dispute of material fact is genuine if the evidence would allow the trier of fact to return a verdict for the nonmoving party." *United Bank v. Buckingham*, 301 F. Supp. 3d 561, 568 (D. Md. 2018). The court must view the facts and make all reasonable inferences "in the light most favorable to the nonmoving party." *Bauer v. Lynch*, 812 F.3d 340, 347 (4th Cir. 2016). In doing so, though, the court maintains an "affirmative obligation to prevent factually unsupported claims and defenses from going to trial." *Smith*, 2018 WL 950018, at *4. "The mere existence of a 'scintilla' of evidence in support of the nonmoving party's case is not sufficient" to defeat summary judgment. *Id.*

## DISCUSSION

The critical issue presented here is whether Ms. Smith's civil action is time-barred. The defense contends that the deadline for filing this lawsuit was October 26, 2017, and that Ms. Smith missed that deadline by two weeks. *See* Def.'s Mem. 7-9. Ms. Smith argues that Postmaster

General Brennan is equitably estopped from enforcing the 90-day time limit in light of the agency's "affirmative misconduct" in the course of the administrative complaint proceedings. *See* Pl.'s Am. Suppl. Opp'n 23-29.

Before reaching this issue, though, there are two preliminary matters that merit this Court's attention. First, it is necessary to ascertain precisely what cause of action Ms. Smith is seeking to assert in this suit. Second, I must decide whether to treat the defense's motion as a motion to dismiss under Rule 12(b)(6) or as a motion for summary judgment under Rule 56.

### A.

To begin, a few words are in order about the cause of action Ms. Smith is asserting. The civil cover sheet submitted along with the Complaint indicates Ms. Smith is asserting a retaliation claim under Title VII. *See* ECF No. 1-3. Title VII's anti-retaliation provision prohibits an employer from retaliating against an employee for his or her opposition to, or complaint about, an employment practice that he or she reasonably perceives to be unlawful under Title VII. *See* 42 U.S.C. § 2000e-3(a); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015); *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). Title VII, though, does not itself proscribe all forms of employment discrimination. Rather, the statute prohibits employment discrimination only to the extent that it is based on a person's "race, color, religion, sex, or national origin." § 2000e-2; *see Chang Lim v. Azar*, 310 F. Supp. 3d 588, 603 (D. Md. 2018). Accordingly, the Title VII anti-retaliation provision "does not protect an employee from retaliation where the protected activity involves an alleged disability." *Dones v. Donahoe*, 987 F. Supp. 3d 659, 672 n.4 (D. Md. 2013).

Ms. Smith has not alleged that the Postal Service discriminated against her on any basis covered by Title VII. Accordingly, her Amended Supplemental Memorandum of Law in

Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment – which, in contrast with her Complaint, was drafted with the aid of counsel – dispenses with the Complaint's references to Title VII and instead asserts that Ms. Smith "brings her claims under the Rehabilitation Act." Pl.'s Am. Suppl. Mem. 8 n.2, ECF No. 25. The defense has likewise assumed that Ms. Smith's federal lawsuit seeks relief under the Rehabilitation Act, rather than under Title VII. *See* Def.'s Mem. 10 n.2. For purposes of ruling on the defense's motion, I will assume the same. *See Dones*, 987 F. Supp. 2d at 672 n.4.

**B.**

The next question that must be addressed concerns the applicable standard of review. The defense's argument that Ms. Smith's claim is time-barred is an affirmative defense, which typically "may not be raised in a Rule 12(b)(6) motion because [such a motion] is intended merely to test the legal adequacy of the complaint." *Darden v. Cardinal Travel Ctr.*, 493 F. Supp. 2d 773, 775 (W.D. Va. 2007); *see also Stewart v. Johnson*, 125 F. Supp. 3d 554, 559 (M.D.N.C. 2015). The Fourth Circuit has explained that

> in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear on the face of the complaint."

*CSX Transp., Inc. v. Gilkison*, 406 F. App'x 723, 728 (4th Cir. 2010) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)).

Ms. Smith's Complaint is decidedly brief. And while it does include, as an exhibit, a copy of the OFO's July 2017 final order and right-to-sue notice, *see* July 2017 OFO Order, it does not chronicle the history of the administrative proceedings that led to this lawsuit or attest to the date on which Ms. Smith received the right-to-sue notice. As I find it necessary to draw on materials

that are neither contained in the Complaint nor integral to it, I will treat the defense's motion as a motion for summary judgment under Rule 56.[4]

## C.

I now turn to the merits of the defense's argument that this suit was untimely.

"[T]he initial inquiry for any Rehabilitation Act claim is whether all administrative prerequisites have been fulfilled . . . ." *Marshall v. Donohoe*, No. DKC 12-431, 2013 WL 597596, at *3 (D. Md. Feb. 15, 2013). First, a plaintiff seeking to bring a Rehabilitation Act claim against a federal government employer must exhaust her administrative remedies. *See Lucas v. Henrico Cty. Sch. Bd.*, 822 F. Supp. 2d 589, 603 n.13 (E.D. Va. 2011); *Kim v. Potter*, No. DKC 09-2973, 2010 WL 2253656, at *4 (D. Md. June 2, 2010). For her part, Ms. Smith pursued relief through the administrative process for a full decade, and there does not appear to be any dispute that she exhausted her administrative remedies.

Separately, a plaintiff bringing claims under either Title VII or the Rehabilitation Act must file suit "[w]ithin 90 days of receipt of the Commission's final decision on an appeal." 29 C.F.R. § 1614.407(c); *see Catone v. Potter*, No. 5:08CV132, 2010 WL 1141352, at *2 (W.D.N.C. Mar. 22, 2010); *Grey v. Henderson*, 169 F. Supp. 2d 448, 451 (M.D.N.C. 2001); *see also Harris v. United States*, No. DKC 11-916, 2012 WL 1067883, at *2 n.4. (D. Md. Mar. 28, 2012) (explaining that Title VII's procedural scheme applies to actions under the Rehabilitation Act (citing 29 U.S.C. § 794a(a)(1))). This requirement functions as a statute of limitations "[f]or all intents and purposes." *Bowers v. Potter*, 113 F. App'x 610, 612 (5th Cir. 2004); *see Acosta-Vega v. Brown*,

---

[4] As Postmaster General Brennan styled her dispositive motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment" and attached exhibits to her motion, the parties are on notice that this Court may treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998); *Jarallah v. Thompson*, 123 F. Supp. 3d 719, 724 (D. Md. 2015).

No. 96-1769, 1996 WL 734029, at *1 (1st Cir. 1996) (per curiam); *Gray-Koyier v. Balt. Cty. Pub. Schs.*, No. MJG-17-CV-1888, 2018 WL 1505789, at *3 (D. Md. 2018); *Gardner v. Honest Weight Food Co-op, Inc.*, 96 F. Supp. 2d 154, 158 (N.D.N.Y. 2000). The 90-day deadline is "strictly enforced" but is subject to equitable tolling. *Gray-Koyier*, 2018 WL 1505789, at *3 (citing *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 427 (D. Md. 2013)).

Under this scheme, "[t]he date on which the claimant received the EEOC letter becomes critical in determining the commencement of the 90-day period." *Nguyen v. Inova Alexandria Hosp.*, No. 98-2215, 1999 WL 556446, at *3 (4th Cir. 1999) (per curiam). Naturally, "if the actual date of receipt is confirmed by evidence, that date governs." *Id.* Failing that, though, courts in this circuit have developed procedural rules for ascertaining the date on which a right-to-sue notice was received. In such cases, courts presume the claimant received the right-to-sue notice "within three days from after it was issued and mailed." *Gray-Koyier*, 2018 WL 1505789, at *3 (citing Fed. R. Civ. P. 6(d)). The plaintiff may, however, rebut this presumption by presenting "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail." *Weathersbee*, 970 F. Supp. 2d at 427-28.

Here, the OFO's decision affirming the agency's final order and notifying Ms. Smith of her right to file a federal lawsuit was certified as mailed on July 25, 2017. *See* July 2017 OFO Order 5. As neither party has presented evidence confirming the actual date of receipt, the Court must presume that Ms. Smith received the right-to-sue notice no later than July 28, 2017 – that is, three days after it was certified as mailed. See *Gray-Koyier*, 2018 WL 1505789, at *3.

This presumption, as noted above, is rebuttable. Ms. Smith, however, has not presented any admissible evidence that might permit this Court to infer she did not receive the notice by July

28, 2017. Rather, in her declaration, she acknowledged that she did receive the OFO's decision in the mail but said she did not "recall exactly when [she] received it." Smith Decl. ¶ 36. She said she "went online and entered the tracking number on the envelope to determine the delivery date, but the delivery date information was not available." *Id.*

Ms. Smith does not challenge the application of the three-day presumption. She argues, though, that barring Ms. Smith's suit on timeliness grounds would be inconsistent with the "remedial purpose" of federal anti-discrimination laws. *See* Pl.'s Am. Suppl. Opp'n 24. Her response in opposition to the defense's motion alleges that the Postal Service "has effectively cheated Ms. Smith out of a job and foreclosed all avenues of relief available to her, save this one." *Id.* For this reason, it says, the Postmaster General must be equitably estopped from arguing that Ms. Smith's suit is procedurally barred. *See id.*

Statutory timely-filing requirements under Title VII and other federal employment-discrimination laws are "subject to waiver, estoppel, and equitable tolling." *Wongus v. McDonald*, No. ELH-15-2950, 2016 WL 6892720, at *20 (D. Md. Nov. 23, 2016) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392 (1982)). The Supreme Court has observed, though, that these forms of equitable relief are granted "only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *see Eaton v. Digital Equip. Corp.*, 16 F. App'x 95, 96 (4th Cir. 2001) (per curiam) ("Courts strictly adhere to the time limits in [Title VII] and rarely allow equitable tolling of limitations periods."). Similarly, in a discussion of statutory time limits for filing federal habeas petitions, the Fourth Circuit has explained:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair

11

> accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *see Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc); *Kramer v. Bd. of Educ. of Balt. Cty.*, 788 F. Supp. 2d 421, 426 (D. Md. 2011).

In *Chung v. U.S. Department of Justice*, 333 F.3d 273 (D.C. Cir. 2003), the District of Columbia Circuit took care to distinguish between two distinct forms of equitable relief that courts have sometimes conflated. There, the court explained that one form of relief, properly labeled as "equitable tolling," "applies most commonly when the plaintiff 'despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim." 333 F.3d at 278 (quoting *Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998)). This doctrine relieves an "innocent" plaintiff of the harsh consequences of an untimely filing, ensuring that he or she "is not, by dint of circumstances beyond his control, deprived of a 'reasonable time' in which to file suit." *Id.* at 279.

"Equitably estoppel," by contrast, "precludes a defendant, because of his own inequitable conduct – such as promising not to raise the statute of limitations defense – from invoking the statute of limitations." *Id.* at 278; *Aikens v. Ingram*, 524 F. App'x 873, 880 (4th Cir. 2013) (contrasting equitable tolling from equitable estoppel); *Zell v. Donley*, 757 F. Supp. 2d 540, 544 (D. Md. 2010). This doctrine does not merely extend the filing deadline; rather, it "takes the statute of limitations out of play for as long as is necessary to prevent the defendant from benefitting from his misconduct." *Chung*, 333 F.3d at 279.

The burden of establishing a factual basis for tolling or estopping the defendant from relying on the limitations period rests with the plaintiff. *See Bowers*, 113 F. App'x at 613; *Rock*

*v. McHugh*, 819 F. Supp. 2d 456, 469 (D. Md. 2011). To benefit from equitable estoppel, the plaintiff must prove, in particular, "that the defendant engaged in affirmative misconduct intended to mislead or deceive [her] into missing the deadline." *Rock*, 819 F. Supp. 2d at 469; *see Eaton*, 16 F. App'x at 96 (explaining that equitable estoppel "applies where the defendant engages in intentional misconduct to cause a plaintiff to miss a filing deadline"); *Hinton v. Cheney*, No. 93-1263, 1993 WL 460651, at *4 (4th Cir. 1993) ("We have generally allowed for equitable relief only when the defendant misled or deceived the plaintiff in order to prevent the plaintiff from discovering the existence of a cause of action or from filing a timely claim.").

For example, in *Harris v. O'Malley*, a former courtroom clerk delayed filing a disability-based discrimination suit against Maryland state officials while under the misconception that the law required her to exhaust her administrative remedies before filing suit. No. WDQ-13-2579, 2015 WL 996557, at *5 (D. Md. Mar. 4, 2015). In a motion for summary judgment, the state officials argued she had failed to assert her Rehabilitation Act claims within the applicable statute of limitations. *See id.* at *4. The clerk sought to equitably estop the officials from relying on the statute of limitations, arguing that they had "knowingly misrepresented—and provided insufficient information about—her right to file a law suit, delayed filing the position statement until after the statute of limitations expired, and misled [her] into believing they wanted to mitigate or settle the complaint." *Id.* at *5. The district court characterized the issue as a "close" one but concluded that, "viewing the evidence in the light most favorable to [the clerk], . . . a reasonable jury could find that the [officials'] wrongful conduct prevented [her] from timely filing suit." *Id.* at *6. The court therefore denied the officials' motion for summary judgment on those claims. *See id.*

By contrast, in *Zografov v. V.A. Medical Center*, the Fourth Circuit affirmed a district court's decision dismissing a foreign-born physician's Title VII suit against the Veterans Affairs

Medical Center on the ground that he had not consulted an EEO counselor about his discrimination claims within 30 days, as required by federal regulation, and had therefore failed to exhaust his administrative remedies. 779 F.2d 967, 967-68, 970 (4th Cir. 1985). The Fourth Circuit rejected the physician's estoppel argument, explaining that he had "made no showing of affirmative misconduct on the part of the government, which is the least the court would require, even if that would suffice, to rely upon estoppel." *Id.* at 969. Rather, the court noted, the record showed that the V.A. had taken "measures to inform its employees of the correct procedure for timely filing discrimination complaints" via newsletters, bulletin board announcements, and orientation sessions for new employees. *Id.* at 969-70. And while the physician had alleged that an EEO officer misinformed him about proper reporting procedures, the court determined this did not "amount[] to a showing of affirmative misconduct," as there was "nothing in the record to show that the [physician] told the Officer that he wanted to present a discrimination complaint." *Id.* at 970.

Ms. Smith, drawing on language that first appeared in *Zografov*, asserts that "affirmative misconduct is the test for determining when estoppel applies." Pl.'s Am. Suppl. Opp'n 25. But this is a mischaracterization. All employment-discrimination suits accuse defendants of "affirmative misconduct" of one kind or another, but it simply cannot be the case that all employers are equitably estopped from raising the applicable statute of limitations or timely filing requirement as a defense. Rather, to invoke equitable estoppel, a plaintiff must show that the defendant's affirmative misconduct interfered with her opportunity to file a timely claim. *See Hinton v. Cheney*, 1993 WL 460651, at *4; *see also Irwin*, 498 U.S. at 96 (noting that the Court had allowed equitable estoppel "where the complainant has been induced or tricked by his adversary's misconduct *into allowing the filing deadline to pass*" (emphasis added)).

Ms. Smith argues this case "cries out for an administrative remedy" because of the Postal Service's "affirmative misconduct" in connection with this dispute. Pl's Am. Suppl. Opp'n 24-25. But, contrary to her plaintive assertions, none of the allegations she raises against the agency had any bearing on her opportunity to file this lawsuit on time.

Ms. Smith's first allegation is that the Postal Service concealed her favorable grievance resolution. *See id.* at 24, 27-28. Ms. Smith attests she did not learn of the resolution until sometime in 2008, even though the resolution was signed on November 22, 2006. *See* Smith Decl. ¶ 33; Grievance Resolution. Her supplemental amended response in opposition to the defense's motion reasons that the resolution, "if complied with, would have obviated the need for the EEO complaint filed on February 21, 2007." Pl.'s Am. Suppl. Opp'n 28. This contention, though, bears no connection to Ms. Smith's opportunity to exercise her legal right to bring this federal civil action. Ms. Smith, in contrast with the former courtroom clerk in *Harris*, cannot argue that her employer withheld information about her right to file a lawsuit, unjustifiably dragged out the administrative complaint process, or misled her into believing it wanted to settle her claim. *See* 2015 WL 996557, at *5. And even if the Postal Service were responsible for concealing the grievance resolution, Ms. Smith has acknowledged that she learned of the resolution "[s]ometime in 2008" – roughly nine years before she filed this suit. *See* Smith Decl. ¶ 33. I fail to see how the concealment could have played any role in Ms. Smith's failure to bring this suit within 90 days of receiving the right-to-sue notice.

Ms. Smith further accuses the Postal Service of "submit[ing] a fraudulent 'modified' job offer and untruthful statements in an affidavit and declaration about [her] grievance and the true nature of the 'modified offer.'" Pl.'s Am. Suppl. Opp'n 28. She argues these misstatements "subverted" her ability to prevail in the administrative proceedings. *See id.* This, too, however, is

15

not the kind of affirmative misconduct that might estop an employer from seeking to enforce a timely-filing requirement. It is not enough to allege, as Ms. Smith does, that the administrative proceedings leading up to a Title VII or Rehabilitation Act lawsuit were unfair. *See id.* Rather, in this context, she must show that the employer "has taken active steps to prevent [her] from litigating in time." *Currier*, 159 F.3d at 1367. Ms. Smith has not made that showing.

I conclude, accordingly, that the defense is entitled to a presumption that Ms. Smith received the right-to-sue notice on July 28, 2017, and that her deadline to file a civil action passed 90 days later, on October 26, 2017. Ms. Smith filed this action on November 9, 2017, missing the deadline by two weeks. As I see no basis on which a reasonable juror could conclude that Ms. Brennan, the postmaster general, should be equitably estopped from asserting this argument in her defense, I am granting summary judgment for Ms. Brennan on the Rehabilitation Act claim.

## CONCLUSION

The OFO properly notified Ms. Smith in its July 25, 2017 order that her right to file a federal lawsuit in connection with her discrimination claim would expire in 90 days. Ms. Smith missed that deadline and has not supported her argument that the postmaster general should be estopped from raising the time limit as a defense. The postmaster general is therefore entitled to summary judgment on the Rehabilitation Act claim.

A separate order follows.

Date:

Paul W. Grimm
United States District Judge